LEASIOLAGI, TAGATA, MAPUILEFALA TAVETE,
PUAPUAGA L. VAGI, and T. F. SOLAITA,
all of Nuuuli, Plaintiffs

v.

FAUMUI of Faganeanea, Defendant

No. 13-1956

High Court of American Samoa

Civil Jurisdiction, Appellate Division

[Matai Title: "Levu" of Nuuuli]

July 20, 1956

OPINION AND ORDER OF AFFIRMANCE

Heard at Fagatogo on June 28, 1956 before MORROW, *Chief Justice*, TAUALA, *Associate Judge*, and MAILO, OFOIA and FAUMUINA, S., *Temporary Associate Judges.*

Punefu S. Paogofie, counsel for Tagata.

R. S. Tago, counsel for Mapuilefala Tavete.

Malaetia T., counsel for Faumui.

MORROW, *Chief Justice*

The Trial Division of the High Court rendered a decision in the case of *Leasiolagi, Tagata, Mapuilefala Tavete, Puapuaga L. Vagi and T. F. Solaita, all of Nuuuli v. Faumui*, No. 13-1954 (H.C. of Am. S.) awarding the

matai name Levu to Tagata. Mapuilefala Tavete and Faumui have appealed, each of them claiming that the Court should have awarded him the title instead of awarding it to Tagata. At the outset of the hearing in the trial court, Solaita withdrew his candidacy for the title and was dismissed as a party to the case. Leasiolagi and Puapuaga have not appealed.

Mapuilefala Tavete grounded his appeal upon the following alleged errors by the lower court:

(1) Its finding that the majority of the Levu Family members supported the candidacy of Tagata instead of finding that the majority supported the candidacy of Mapuilefala Tavete;

(2) Its finding that Tagata was on an equality with Mapuilefala Tavete on the issue of forcefulness, character, personality and capacity for leadership instead of finding that Mapuilefala Tavete was superior to Tagata with respect to the subject matter of this issue;

(3) Its finding that Tagata would be of more value to the Government as the holder of the Levu title than would Mapuilefala Tavete.

Faumui grounded his appeal upon the following alleged errors by the lower court:

(1) Its finding that Faumui was not a blood member of the Levu Family;

(2) Its finding that a majority of the Levu Family did not support his candidacy for the title;

(3) Its finding that Tagata would be of more value to the Government as the Levu than would Faumui.

The power of the Appellate Division on appeal is prescribed in Sec. 213 of subchapter E of section 10 of Amendments, Nos. 11–59, 1952 to the Code of American Samoa. The applicable part of this section reads as follows: "The Appellate Division of the High Court on appeal . . . shall have power to affirm, modify, set aside, or

reverse the judgment or order appealed from or reviewed and to remand the case with such directions for a new trial or for the entry of judgment as may be just. The findings of fact of the Trial and Probate Divisions of the High Court in cases tried by them shall not be set aside by the Appellate Division of that court unless clearly erroneous, but in the case of appeals from the district courts the Appellate Division of the High Court may review the facts as well as the law. . . ." In view of this statute this Court cannot set aside any of the findings of fact of the Trial Division in this case "unless clearly erroneous."

In its opinion, the lower court, speaking with respect to testimony relating to the support in the Levu Family for Mapuilefala and Tagata respectively, said:

"Mapuilefala testified that all of the 224 signers on the petition for him were blood-members. Faumui admitted that 77 of the 224 were blood-members. Leasiolagi testified that 154 on Mapuilefala's petition were not blood-members while Tagata testified that only 15 of the 224 were blood-members. Puapuaga testified that only 30 of the signers on Mapuilefala's petition were blood-members. He said not a single one of the remaining 194 lived on Levu land and that none of the 194 was ever called in to discuss Levu Family matters. We are convinced from the evidence that less than 50 of those on Mapuilefala's petition are real blood-members of the Levu Family.

"Leasiolagi, Puapuaga, Tagata and Mapuilefala testified that all of the 64 signers on the petition for Tagata were blood-members of the Levu Family. Faumui admitted that 60 of the 64 were blood-members. The weight of the evidence is clearly to the effect that all of the 64 are blood-members, and we so find."

We have gone over the evidence before the lower court and believe that the foregoing from its opinion is a correct summary of the testimony and that the finding of fact based thereon is correct. We cannot say that such finding of fact was "clearly erroneous."

In connection with the issue of the wish of the majority or plurality of the family, we think that great weight must

be given to the testimony of Puapuaga who is a blood-son of the late Levu. He has resided in the Family all of his life. He knows the membership of the Family and knows it well. He testified that only 30 of the 224 signers on Mapuilefala's petition were blood-members while all of the 64 signers on Tagata's petition were blood-members. Also he knows who lives on Levu Family land and who, according to Samoan customs, are called in to discuss family matters. In considering the weight to be given to the testimony of Mapuilefala we cannot overlook the fact that he was once suspended from his position in the Department of Agriculture for financial irregularities and that he was, as will appear later, convicted, and jailed for another offense, the nature of which has a direct bearing upon his credibility as a witness.

Mapuilefala further complains that the lower court was in error when it found that he was on an equality with Tagata with respect to forcefulness, character, personality and capacity for leadership instead of finding that he prevailed over Tagata on this issue.

In its opinion, the lower court, speaking of Tagata and Mapuilefala with reference to these matters said:

"Tagata, 53 years old, finished the second grade and then attended a faifeau's school for four or five years. He speaks English well. He has been a lesser matai in the Levu Family for a number of years and lives in the Family. He has held the Tagata title for 10 years. He has rendered a very substantial amount of service to the Levu title. During the war he was a foreman directing the work of 40 laborers. He has been pulenuu of Nuuuli and a pulenuu's policeman. Tagata works on family plantations. He has two sons in the Armed Forces of the United States who make substantial contributions to him."

In the argument on the appeal, it developed that both Tagata and Mapuilefala had been convicted of crime. Their convictions are matters of court record of which we think we may properly take judicial notice. "Generally

speaking, an appellate court may take judicial cognizance of any matter of which the Court of original jurisdiction may take such notice; but it cannot judicially notice matters which would not have been noticed by the Court below." 3 Am.Jur. 375. We think that the Trial Division could very properly have taken judicial notice of these convictions in the district court, the jurisdiction of the district court in such cases having been transferred to the Trial Division. See 31 Corpus Juris Secundum 623–627.

In 1951 Tagata pleaded guilty to a charge of interference with civil rights by a Samoan chief and was fined $25.00. According to the information in the case, he used his rank as a chief to interfere with the civil rights of another by threatening her with bodily injury by members of his family. Apparently there was no bodily injury inflicted. In 1943 Mapuilefala (then Tavete) was convicted of compounding a criminal offense and sentenced to one month in jail and in addition to pay a fine of $50.00. Threats are not uncommon and ordinarily arise in Samoa from a burst of temper. Compounding a criminal offense involves a much more serious matter, viz., corruption. At the time Tavete was convicted the then Code defined compounding a criminal offense as, "The offense of entering into an agreement for a valuable consideration, or taking a reward, for forbearing to prosecute the criminal offense." Sec. 30, A. S. Code of 1937. Tavete's crime involved an interference with the administration of justice as well as moral delinquency while Tagata's involved what is so common, merely threats, normally arising from a burst of temper. While Tagata's offense is not to be condoned, nevertheless it is quite clear that it was very much less serious than Tavete's, and that is indicated by the fact that Tavete was sent to jail while Tagata was not and in addition Tavete was fined $50.00 whereas Tagata's fine was only $25.00.

513

In view of Mapuilefala's jail record which came out on the appeal and his financial irregularities which resulted in his suspension from the Department of Agriculture (neither of which were noticed by the lower court) we think that if the lower court committed any error in finding that Mapuilefala and Tagata were on an equality with respect to the issue of forcefulness, character, personality and capacity for leadership, it was in its failure to find that Tagata prevailed over Mapuilefala on that issue and not in its failure to find that Mapuilefala prevailed over Tagata. If there was error with respect to this issue it was in favor of Mapuilefala and not against him.

However, since the final decision will be the same whether the finding that Tagata and Mapuilefala are on an equality with respect to this issue is set aside or not and also since Tagata has not asked that it be set aside, we will not disturb it even though we may think, considering all of the evidence, that the finding should have been that Tagata prevailed over Mapuilefala on the issue of forcefulness, character, personality and capacity for leadership.

Mapuilefala also complains of the lower court's finding that he ranked third among the original five candidates on the issue of the value of the holder of the title to the Government of American Samoa.

With respect to this issue the lower court in its opinion said:

"On the issue of value to the government as the holder of the title we believe from the evidence that among the 5 candidates Tagata ranks first, particularly in view of the fact that he has been a lesser matai in the Levu Family for many years, and is very familiar with family affairs. Faumui has lived away from the Family for 20 years and could not have the familiarity with family affairs that Tagata has. We think from the evidence that Mapuilefala ranks third on this issue while Leasiolagi ranks fourth. We cannot overlook the fact that while Leasiolagi holds a title in Asu he does not live there with his family. We think in view of this fact that he

would be more interested in holding the Levu title than in serving the family. In the recent case of *Vaimaona Family of Laulii v. Meafou et al.*, No. 8-1956 (H.C. of Am. S.) we said that, 'A chief owes duties to the members of his family. He should serve as well as lead his people'. A chief who lives away from his family is not premarily [sic] concerned with its welfare. He is not serving it to any great extent. Sec. 934 of the Code provides that, 'Whenever a matai shall live away from his family for a period of six months or more, unless engaged in the performance of the duties of a public office of American Samoa, or shall otherwise neglect to perform the duties of his office of matai' he may be removed as such matai. We believe that Puapuaga ranks fifth with respect to this issue of the value of the holder of the matai name to the Government. He has been in jail three different times. It costs the Government money to keep a man in jail. A man who has had to be sent to jail three different times for crime is not very likely to be of great value to the Government as the holder of a matai title."

We have reviewed the evidence on this issue. We cannot say that the lower court's finding on this issue is "clearly erroneous" which, pursuant to the statute (Sec. 213 of subchapter E of Section 10 of Amendments Nos. 11–59, 1952, quoted above), we would be required to do if we were to set aside the finding. The Government sent Mapuilefala to jail for compounding a criminal offense which was not only a corrupt act but also, as we have said, an interference with the administration of justice. One can hardly become enthusiastic about the value of a matai to the Government when it has had to put him in jail for compounding a criminal offense. It costs the Government money to prosecute a man, send him to jail, and keep him there until he has served his sentence. After reviewing all the evidence, we think that the lower court's finding on this issue was correct.

Appellant Faumui first complains of the lower court's finding that he is not a blood-member of the Levu Family. The Court found that he was "an adopted member and not a blood-member of the Levu Family." However, on the

hearing of the appeal his counsel brought to our attention certain records in the High Court cases of *Leaeno et al. v. Levu of Nuuuli,* No. 14-1930 (H.C. of Am. S.) and *Levu of Nuuuli v. Tagata of Nuuuli,* No. 5-1925 (H.C. of Am. S.) from which records it appears that on August 23, 1932, Levu Fuatau gave certain parts of the Levu land Falema-lama in Nuuuli to Gauta, Vaa and Pisa. Pisa is not Faumui. We will take judicial notice of these court records just as we did of the court records relating to Mapuilefala and Tagata. In view of the fact that the Levu gave certain land to Faumui in 1932 and in view of Samoan customs with respect to land, we think that the finding of the lower court that Faumui was "an adopted member and not a blood-member of the Levu Family" should be set aside.

However, setting aside this finding of the lower court will have no effect upon the final decision in this case since Faumui claims that he has only $1/16$ Levu blood in his veins while it is undisputed that Tagata and Mapuilefala, the other two parties to this appeal, each has $1/4$ Levu blood in his veins. Each of them has a greater hereditary right to the title than Faumui.

Faumui claims that the lower court erred in its finding that more blood-members of the Levu Family supported the candidacy of Tagata than any of the other candidates which of course included candidate Faumui. We have reviewed the testimony with respect to the wishes of the family as to who should be the matai. We think the evidence supports the finding that the number of blood-members wishing Tagata to have the title exceeded the number wishing Faumui to have it. While Faumui testified that all of the 165 signers on his petition were blood-members, Leasiolagi testified that 143 of them were not while Tagata, Mapuilefala and Puapuaga testified that 164 of the 165 were not. Leasiolagi, Puapuaga, and Mapuilefala testified that all 64 signers on the petition for

Tagata were blood-members. while Faumui himself testified that 60 of the 64 were blood-members. In view of the evidence on this issue we cannot say that the finding of the Trial Division was clearly erroneous.

Faumui claims on this appeal that he would be of more value to the Government as the holder of the title Levu than would Tagata. We think that the evidence warranted the finding of the Trial Division that Tagata would be of the greater value. With respect to this issue the trial court said that Tagata "has been a lesser matai in the Levu Family for many years, and is very familiar with family affairs. Faumui has lived away from the Family for 20 years and could not have the familiarity with family affairs that Tagata has." These facts are undisputed. Giving consideration to these facts and the additional evidence bearing on the issue of value to the Government, we think that the finding was correct.

It is the conclusion of the writer of this opinion as well as that of the two Samoan Judges who sat on the trial court and the four other Samoan Judges who sat on this appeal that the decision of the trial court awarding the Levu title to Tagata was correct.

We will set aside the finding of the Trial Division that Faumui is an adopted member and not a blood-member of the Levu Family. The decree of the Trial Division awarding the Levu title of Nuuuli to Tagata should be affirmed.

ORDER OF AFFIRMANCE

Accordingly, it is ORDERED that the decree awarding the matai name Levu of Nuuuli to Tagata be and it is hereby affirmed.

The finding of the Trial Division that Faumui was an adopted member and not a blood-member of the Levu Family is hereby set aside.

Costs in the sum of $17.00 are hereby assessed against Mapuilefala Tavete and Faumui, each to pay $8.50. Costs are to be paid within 30 days.